*In re* APPEAL OF PITKIN & BROOKS.

*Opinion filed December 18, 1901.*

TAXES—*imported goods in warehouse of importer not subject to general State tax.* Under clause 2 of section 10 of article 1 of the United States constitution, imported goods still owned by the original importer, and in the original, unbroken packages in which they were imported, are not subject to general State tax, although the United States duties on them have been paid and they are no longer in bonded warehouses but in the warehouses of the importer. (*Siegfried* v. *Raymond*, 190 Ill. 424, distinguished.)

APPEAL from the assessment of the Board of Review of Cook county.

CHARLES H. HAMILL, for appellant.

H. J. HAMLIN, Attorney General, (E. S. SMITH, B. D. MONROE, and GEORGE B. GILLESPIE, of counsel,) for the board of review.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from the board of review of Cook county to reverse its decision holding that certain imported goods were liable to taxation as the property of appellant. Upon the hearing before the board, sitting jointly with the board of assessors of Cook county, appellant's objections to the assessment upon such property were overruled and the property was held subject to taxation.

It appears that on April 1, 1901, the corporation of Pitkin & Brooks had in its own warehouses goods imported from foreign countries of the value of $90,928, and the board, taking the view that imported goods in the warehouses of a private individual or corporation,— in other words, not in government bonded warehouses,— became subject to taxation notwithstanding the provi-

sions of the constitution of the United States, (art. 1, sec. 10, par. 2,) and finding that the appellant had, on the first day of April, 1901, other goods, "including moneys in bank, credits, fixtures, chattels, and all other taxable personal property, of the value of $49,571," it assessed its whole property, including the imported goods, at $140,499.

It seems clear that in its construction of the constitutional prohibition the board was in error. (*Brown* v. *Maryland*, 12 Wheat. 419; *Lowe* v. *Austin*, 13 Wall. 29; *Siegfried* v. *Raymond*, 190 Ill. 424.) This is conceded by counsel for appellee, but it is insisted the order of the board should be affirmed, the contention being, that although the imported goods were exempt from taxation, yet the board should have found that the objector owned, on the first day of April, other property of much greater value than $140,499. It is perfectly clear that the assessment was made as above stated, and that the board made no mistake, in fact, in ascertaining the value of other taxable property. It was recited in their order: (1) "The board holds, as a proposition of law, that goods imported from foreign countries, still owned by the original importer and still in the original, unbroken packages in which the same were imported, upon which the United States duties have been paid and no longer in bonded warehouses but in the warehouses or stores of such importer, are subject to general State tax; (2) the board finds, as a matter of fact, that the value on April 1, 1901, of goods imported from foreign countries by Pitkin & Brooks, etc., was $90,-928; (3) the board finds, as a matter of fact, that the value of other taxable personal property of Pitkin & Brooks on the first of April, 1901, not including any goods imported from foreign countries, but including moneys in bank, credits, fixtures, chattels and all other taxable property, was $49,571; (4) the board therefore finds that said Pitkin & Brooks should be assessed upon $140,499, and the assessment is spread accordingly."

It is true that the president of the company testified on the hearing that the firm had, on the first day of April, 1901, on hand $45,347.61; that they had bills receivable and accounts to the amount of $273,845.17 and cash on hand to the amount of $2999.18; but he also testified that they owed accounts and bills payable to the amount of $308,429.38, and had an overdrawn bank account of $3052.79. The contention now is, that the board of review improperly deducted from the taxable property of the firm the bills payable and overdraft, because, it is said, "the certified copy of the schedule exhibited in this record, and marked exhibit 'A,' does not make up a list of credits to which they were entitled, as provided by the statute." No such question was raised on the hearing, and we think the board was justifiable, from the evidence, in finding, as it did, that, including the imported goods, the whole amount of appellant's taxable property was but $140,499. We are able to discover nothing in *Siegfried* v. *Raymond*, 190 Ill. 424, that militates against this position. In that case the board of review fixed the value of appellants' property at the sum of $20,000, without indicating how the amount was ascertained, and as there was evidence of property belonging to the property holder exceeding in value that amount, exclusive of imported goods in original packages, it was held that the bill in equity filed in that case to enjoin the collection of the tax could not be maintained. We there said: "To entitle appellants to relief in a court of equity they must have shown that property belonging to them exempt from taxation was included in their assessment." This the appellant in this case has done, if the orders of the board of review above set forth are to be given any force.

The assessment upon the imported goods to the amount of $90,928 will be set aside, and the county clerk and county treasurer of Cook county are directed to make that deduction from the assessment upon their

books. The county treasurer should not enforce the collection of the taxes upon said amount, and if the same has already been collected, should refund the same to the appellant. *Reversed and remanded.*