(No. 21441.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE CONCORDIA FIRE INSURANCE COMPANY OF MILWAUKEE, Appellee.

*Opinion filed October 22, 1932—Rehearing denied Dec. 9, 1932.*

JOHN A. SWANSON, State's Attorney, LEON HORNSTEIN, LOUIS H. GEIMAN, HARRIS F. WILLIAMS, and HIRAM T. GILBERT, for appellant.

SILBER, ISAACS, SILBER & WOLEY, (FREDERICK D. SILBER, and HERBERT W. HIRSH, of counsel,) for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

The State's attorney of Cook county, by the direction of the board of county commissioners of that county, brought a suit in the circuit court in the name of the People of the State of Illinois, under section 230 of the Revenue act, against appellee, the Concordia Fire Insurance Company of Milwaukee, Wisconsin, for omitted and unpaid taxes on the net receipts of its business in Cook county for the years 1923 to 1927, inclusive. The cause was heard by the court without a jury, and the issues which had been made were found in favor of the defendant and judgment was entered on the finding. From the judgment the plaintiff has appealed to this court.

This is a companion case of *People* v. *Franklin Nat. Ins. Co.* 343 Ill. 336, the main difference being that in that case the defendant stood by its demurrer to plaintiff's declaration, while in the present case an issue of fact was made and the judgment was based on evidence heard by the court. In each case one of the main contentions of appellee was that section 30 of the act of 1869, (Cahill's Stat. 1929, chap. 73, sec. 159,) the section by virtue of which the

assessment in each case was made, was unconstitutional and void within the purview of the constitutions of the United States and of this State. An extensive brief has been filed by appellee upon this subject, but a careful and exhaustive examination of it discloses the fact that no new point is raised therein which was not raised by the same counsel and considered and discussed by this court in opinions filed in *People* v. *Franklin Nat. Ins. Co. supra,* and *Hanover Fire Ins. Co.* v. *Harding,* 327 Ill. 590, in each of which cases section 30 was held to be valid and especially found not to contravene the fourteenth amendment of the United States constitution. For a more complete discussion of the questions raised, reference is made to the opinions in those cases. The latest discussion as to the meaning and applicability of the fourteenth amendment by the Supreme Court of the United States is to be found in an opinion handed down May 23, 1932, in *Sproles* v. *Binford,* 76 U. S. (L. ed.) 827, and by this court in *People* v. *Monroe,* 349 Ill. 270, reference to which opinions is likewise made.

The evidence shows that for the years 1923 to 1926, inclusive, appellee made in each year what it claims was a proper return of its net receipts to the board of assessors of Cook county. Such returns were accepted by the taxing bodies and taxes extended thereon in each year, and in each year the taxes were returned by the county collector as unpaid. These assessments were not scaled and debased, the same as other personal property assessments, in accordance with the rule laid down in *Hanover Fire Ins. Co.* v. *Harding, supra.* A like return was made for 1927, but while the assessment books were in the hands of the board of review for review, on November 8, 1927, a notice in writing was given appellee "that at ten o'clock A. M., Thursday, December 15, 1927, in the hearing room of the board of review of Cook county, Illinois, on the third floor of the county building in Chicago, Illinois, there will be a

hearing upon a proposed listing and assessment of net receipts of your agencies in Cook county, Illinois, required to be listed and subject to taxation under section 30 of the act entitled, 'An act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois,' approved March 11, 1869, and the acts of the General Assembly amendatory thereof and supplementary thereto, for each of the periods of one year ending April 30 of the years 1923 to 1926, both inclusive, upon which no taxes have been paid, and the listing and assessment of which heretofore attempted to be made for each of said years was illegally made, at which time you are required to attend and will be entitled to be heard." On the same day a like notice was served upon appellee that at the same time and place the board of review would review the listing and assessment made by the board of assessors of the net receipts of appellee's agencies in Cook county required to be listed and subject to taxation for the year ending April 30, 1927, under section 30 of the aforementioned act, and require appellee to file with the clerk of the board of review, on or before November 22, 1927, separate returns in writing for each one of its agencies maintained in Cook county during the year ending April 30, 1927. At the time and place mentioned in the notice appellee appeared before the board of review and an extended hearing was had. It commenced on December 15, 1927, and was continued on the 16th of December, at which time it was stated that this court was then in session and that a petition for rehearing was pending in *Hanover Fire Ins. Co.* v. *Harding, supra,* and that it was likely to be decided before the adjournment of court, which would probably occur within a week. By consent of all parties it was agreed that further proceedings before the board of review should be suspended until such adjournment. It was thought that the decision of the court on the petition for rehearing might settle all the matters in controversy. The

petition was denied on December 20, 1927, and thereafter the parties were notified to appear before the board of review on December 28, 1927, at which time the hearing was resumed, all parties being represented by attorneys. A full stenographic report of the hearing is found in the record and seventy-eight pages of it may be found in the abstract. The hearing was informal and consisted of questions by members of the board and statements and counter-statements as to the law and facts, with some admissions of fact by the respective attorneys. The gist of the proceedings was that the attorneys for the taxing body claimed that the returns by appellee for the years 1923 to 1927, inclusive, were not made in a proper manner; that they were each incorrect by omitting therefrom a large amount of the net receipts of appellee's insurance business in Cook county, and called to the attention of the board certain specified omissions and that appellee had paid no taxes levied on its net receipts for the years 1923 to 1927, inclusive. On its part appellee contended that section 30 was unconstitutional; that appellee was not required to make any return of net receipts; that it had made correct returns; that these returns did not contain the net receipts from certain lines of its insurance business; that in arriving at the net receipts listed it had deducted amounts for overhead, and that the amounts returned only amounted to about seventy-five or eighty per cent of its net receipts; that it had paid no tax at all on them for the years 1923 to 1927, inclusive, and that the net receipts returned had not been scaled and debased, as had the returns on other personal property. Although requested to give the board detailed information as to its gross receipts and as to the deductions made therefrom, appellee offered none and denied that the board of review had any jurisdiction in the matter of the assessment of appellee's net receipts. Thereafter the board of review, acting on the best information attainable, without further notice to appellee increased the

amount of the assessment for each of the five specified years, and taxes were levied thereon, which not being paid, this suit was brought for their recovery.

On the trial it was stipulated by the parties that defendant might introduce any evidence which would be admissible in equity under appropriate pleadings and any evidence which would be competent in support of a bill to restrain the collection of the taxes, plaintiff waiving any objection to the jurisdiction of the court to entertain and give effect to any equitable cause of action or defense in favor of defendant, and that the court might enter such judgment or decree as may be appropriate to and in conformity with the evidence, so that defendant can have the same relief to which it would be entitled under a bill to restrain the collection of the taxes; that defendant may offer evidence proving that (a) the assessment of the taxes by the board, of review was fraudulent and void; (b) that the board of review had no power to assess net receipts taxes for the years in question as omitted net receipts or as omitted property taxes; (c) that the omitted net receipts taxes assessed for the years in question were void and uncollectible; and (d) that section 30 of the act of 1869 is unconstitutional and void. It was also stipulated, in substance, that during the years in question various non-incorporated foreign associations, various individuals, various so-called Lloyds and various domestic fire insurance companies were lawfully engaged in transacting the business of fire, marine and inland navigation insurance in Illinois in competition with defendant and all other foreign incorporated fire insurance companies during that period lawfully transacting the business of fire, marine and inland navigation insurance, and that said non-incorporated foreign associations, individuals, Lloyds and domestic insurance corporations during said years were not assessed for taxation upon their several net receipts covering fire, marine and inland navigation insurance risks assumed by them in Illinois, or upon

any real or personal property other than net receipts, like all other property owners and tax-payers, and that said foreign stock fire insurance companies were assessed for taxation upon their net receipts derived from such competitive business; that foreign casualty insurance companies also carried on such competitive business and were not taxed on their net receipts derived therefrom. The questions arising by reason of these stipulations were fully discussed and decided in *People* v. *Franklin Nat. Ins. Co. supra.*

Section 276 of the Revenue act provides: "If any real or personal property shall be omitted in the assessment of any year or number of years, or the tax thereon, for which such property was liable, from any cause has not been paid, or if any such property, by reason of defective description or assessment thereof, shall fail to pay taxes for any year or years, in either case the same, when discovered, shall be listed and assessed by the assessor and placed on the assessment and tax books. The arrearages of tax which might have been assessed, with ten per cent interest thereon, from the time the same ought to have been paid, shall be charged against such property by the county clerk. It shall be the duty of county clerks to add uncollected personal property tax to the tax of any subsequent year, whenever they may find the person owing such uncollected tax assessed for any subsequent year."

It is claimed by appellee that it having made returns of its net receipts for the years 1923 to 1926, inclusive, and the taxing authorities having accepted such returns as correct and assessed taxes thereon, its net receipts for those years could not be classified as omitted property and assessed by the board of review in 1927 even though the net receipts for such years exceeded the amount returned. If a property owner has not been assessed on credits at all, the board of review may in subsequent years assess credits owned by him but which were omitted, but if credits have been assessed by the assessor and the taxes extended there-

on have been paid, the board of review in subsequent years has no authority to increase such assessment, either upon the theory that it was too low or that the board there assessed omitted credits. (*People* v. *Hunt,* 311 Ill. 291; *Warner* v. *Campbell,* 238 id. 630; *Barkley* v. *Dale,* 213 id. 614.) In those cases it was held that the assessor is required, in determining the value of property assessed, to exercise his judgment, and that his acts are in the nature of judicial acts and not subject to review by his successor or succeeding boards of review for errors of judgment. Section 277 of the Revenue act, however, provides: "If the tax or assessment on property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceeding or other cause, the amount of such tax or assessment which such property shall have paid may be added to the tax on such property for any subsequent year, in separate columns designating the year or years."

In the instant case appellee made its return of net receipts for the years 1923 to 1926, inclusive. Such returns were received and accepted as correct by the assessor, acted upon by the taxing bodies and taxes extended thereon. The taxes extended were not legal, for the reason that the amounts returned as net receipts were not scaled and debased as the returns of other personal property were in the extension of the taxes. They were not omitted property, as a return had been made which was accepted by the assessor as correct. In *People* v. *Missouri Pacific Railroad Co.* 301 Ill. 541, it is said: "It is the levy which creates the tax, and the extension by the county clerk is merely a formal step necessary to enable the authorities to collect the tax. The legislature recognized that a situation like the one before us might arise, and so it provided by section 277 of the Revenue act that if a tax on property liable to taxation is prevented from being collected for any year or years by reason of any erroneous proceeding or other

cause, the amount of such tax or assessment which such property should have paid may be added to the tax on such property for any subsequent year." While the board of review was not authorized in 1927 to assess appellee for omitted net receipts, yet such receipts were liable to taxation for those years, and the collection of such taxes having been prevented by erroneous proceedings, the amount of such tax or assessment which such property should have paid could be added to the assessment on such property for the year 1927 by the board of review, and the tax extended in 1927 for the years 1923 to 1926, inclusive, was legal to the extent that it was based on the returns made by appellee and accepted by the assessors during such years.

One of the findings of the trial court on the basis of which its judgment was entered was, that "the assessment of omitted net receipts for the years 1923, 1924, 1925 and 1926, and the net receipts for the year 1927, made by the board of review, all in 1928, was made without the exercise of honest judgment by the board of review and at the mere will of said board." This finding has no basis in the evidence. The transcript of proceedings before the board of review shows that the board manifested a marked desire to do justice to all parties and repeatedly tried to get from the attorneys for appellee figures which would meet the requirements of the law and could be used as the basis of an assessment satisfactory to both parties, but without success.

One of the findings of the trial court was, that the valuations of so-called omitted net receipts adopted by the board of review in 1928 for the five years in question were prepared by one Seeley, an assistant corporation counsel, who was under contract with the city of Chicago whereby he was to receive a fee contingent upon the amount collected, and that his valuations "were listed as valuations of net receipts upon the books of the board of review of Cook county without consideration by the board and assessed at

the board rates applicable, and that the taxes so extended upon the assessment so made were fraudulent and null and void." Upon the trial Seeley was called as a witness by appellee and testified to the investigations he had made in the reports of appellee to the city and the State and the discrepancies found in appellee's returns of net receipts to the assessor. He also testified to the comparison of appellee's returns and reports with the returns and reports of other companies engaged in the same lines of insurance. As a result of his investigations he made computations and estimates as to the amount of appellee's net receipts upon slips of paper, which estimates and computations were shown to the members of the board of review having charge of the insurance assessments, at whose direction, after being checked up and verified, they were placed upon the assessment roll and afterwards approved by the entire board. The deductions made from the gross receipts were made according to methods adopted in 1924 by the board of uniformly allowing all foreign insurance companies of this class thirty per cent from the gross receipts for expenses. The slips prepared by Seeley were shown by him in court to the attorney for appellee, and no evidence was introduced by it to show the inaccuracy of his figures or that the assessment as made by the board of review was in excess of the actual net receipts.

Appellee's complaint that after the board of review had determined the amount of assessment appellee did not have notice and an opportunity for a second hearing is not entitled to consideration. The entire board heard appellee with consideration at the extended hearings had, and when it declined to give the board the requested information it cannot be heard to complain that the board proceeded to make the assessment on the best evidence obtainable. It was not necessary that in order to do so it should call in witnesses and act on sworn testimony. It is to be noted that the admissions made by appellee's attorneys at the

hearings were taken as the basis for the computations upon which the amount of the assessments were made. The testimony of the witnesses called by appellee who made out its returns to the assessor showed that in those returns all receipts from business, other than fire, marine and inland navigation insurance, were omitted. In *Hanover Fire Ins. Co.* v. *Harding*, 272 U. S. 494, the Supreme Court of the United States upon this point said: "The petitioner [*i. e.*, the Hanover Fire Insurance Company,] is an insurance company organized under the laws of the State of New York. By its charter it is authorized to do a business of insurance against the hazard of fire, marine perils, inland navigation, tornado, theft, explosion, property damage to automobile and other property by collision, crop insurance, and other similar lines of insurance against hazards. There are in Illinois domestic insurance companies which do business in all such risks. In *Fidelity and Casualty Co.* v. *Board of Review*, 264 Ill. 11, decided in 1914, the Supreme Court held that the only insurance companies whose receipts come within section 30 are foreign fire, marine and inland navigation insurance companies doing business in the State, and if they do business in the other hazards above stated, as the complainant and petitioner is authorized to do, then they must pay taxes on their net receipts, made not only from fire, marine and inland navigation company business but also from the other hazards." Appellee was authorized by law to do business in the same hazards as the Hanover Fire Insurance Company and did engage in the same in Cook county, and therefore it is liable for taxes on its net receipts from all such hazards.

In *Pratt* v. *Raymond*, 188 Ill. 469, where the evidence showed that the board of review in making an assessment acted upon information obtained by its members regarding the property of complainant subject to assessment, from his commercial rating, from men in the same line of busi-

ness and from persons who had means of knowing what his personal property was, the court in holding the assessment valid said: "The principal objections urged against the tax are, that the proceedings of the board of review were irregular in not taking sworn testimony and in assessing complainant on evidence obtained in secrecy from rivals in business; that the board did not enter on the assessor's books specific items of personal property which were assessed and the value of the same, and did not enter the full value but only the assessed value; and that the record is not sufficient to sustain the tax because it does not show the particular items of property and the kind thereof assessed or the values thereof. While the record should show the kinds of property assessed and the value thereof, and the total value, the facts alleged and the objections so urged afford no ground whatever for the exercise of the limited jurisdiction of a court of equity."

In *Earl & Wilson* v. *Raymond,* 188 Ill. 15, the tax-payer scheduled its property at $26,000. The board of review caused a notice to be served on the tax-payer to appear before it on a day certain to show cause why the assessment should not be increased. Pursuant to the notice the tax-payer's manager appeared before the board and was referred to one member thereof, who examined him in reference to the assessment. Subsequently the entire board of review, in consideration of the information obtained upon the hearing before the one member of the board and from the facts and information obtained by each member from men engaged in the same line of business as appellant, from its commercial rating and standing at the banks, and from financiers in the city and from other sources, increased the valuation to $40,000. On a bill to enjoin the collection of taxes on the increased amount, this court in sustaining the assessment said: "All bodies composed of a number of persons may, and generally do, act through committees of one or more to procure facts in reference to

the matters to be acted upon and receive recommendations as to the action that should be adopted. * * * Appellant's contention that the action of the board of review is invalid for the reason that the witnesses from whom they obtained information as to the value of appellant's property were not called in and sworn and an opportunity given for cross-examination is not well founded. The law gives the board the power, and imposes upon it the duty, of changing any assessment which in their opinion may be incorrect; and in fixing the valuation to be placed upon the taxpayer's property the board may act upon their own knowledge, information and judgment, and are not concluded by the statements of the owner of the property."

In *American Express Co.* v. *Raymond*, 189 Ill. 232, where the trial court had dismissed a bill to enjoin the collection of taxes assessed and extended, this court on appeal said: "The complaint was and is that the board of review of Cook county increased the assessed valuation without affording appellant an opportunity to be heard. It is not denied that appellant was properly notified to appear before the board and show cause why the assessment on its property should not be increased nor that appellant's agent appeared in pursuance of such notice, but the point made is that there was no hearing of facts relating to the value of appellant's property but only an informal conversation between the members of the board and appellant's agent, together with the agents of other express companies who were present at the same time, relative to their respective assessments. It appears that, adopting the suggestion of a member of the board, the board and the representatives of the several companies assembled around a table in the office of the board and took up the matter of the assessment of all such companies together. The board heard what these representatives had to say, but it does not appear that specific valuations were discussed nor that any decision was announced or reached. The meeting adjourned, or, at any

rate, the members of it separated, and the appellant claims that its assessment was afterward increased without its knowledge or any opportunity to be heard in reference thereto and without any notice or information from the board as to the evidence or grounds upon which such increase was based. If appellant desired to make any showing to the board that the schedule and valuations of its property were correct and should not be changed or increased it had the opportunity to do so, and it cannot complain that the board did not produce the evidence upon which it acted in making the increase."

In *Leper* v. *Pulsifer*, 37 Ill. 110, the tax-payer had furnished the assessor with lists of personal property valuing his personal property at $11,608, and the assessor not being satisfied with this valuation increased it to $25,000, and then, under section 8 of the Revenue law as it then was, doubled this amount as a penalty. On a bill to restrain the collection of a tax upon the excess valuation it was held that where the statute gives one aggrieved by an assessment the opportunity to appear before the board for the correction of lists after knowledge of the grievance, and he does so appear but declines to prove that the valuation put upon his own property is excessive, the assessment will be presumed to be correct.

In *Cummings* v. *Webber*, 218 Ill. 521, the board of review gave a tax-payer notice to appear before the board of review and show cause why his assessment should not be increased, and he came before the board but made no showing whatever, and the board of review increased his assessment $93,980 upon credits. In sustaining the assessment this court said: "Where a tax-payer is notified to appear before the board of review and show cause why his assessment should not be increased, and he fails to improve the opportunity so afforded him to avail of his remedy at law by showing cause against an increase, equity will not interfere to relieve him from an increased assessment on

the ground, alone, that such increased assessment is excessive in amount or results in double taxation.—*Coxe Bros. & Co.* v. *Salomon,* 188 Ill. 571; *Standard Oil Co.* v. *Magee,* 191 id. 84."

When we apply the rules hereinabove stated to the facts of this case we must find that the complaints against the assessment of appellee's net receipts for the year 1927 are not well founded, that equity and good conscience require that the tax levied and assessed thereon should be paid, and that a bill to enjoin the collection of such tax could not be sustained.

While this cause as originally brought was an action in debt, yet by stipulation of the parties the cause of action was changed, proper pleadings were waived and a stipulation entered, in effect, that the court might enter a judgment or decree restraining the collection of all or a part of the taxes for which suit was brought or might enter judgment or decree for all or any part of such taxes, in conformity with the evidence, law, equity and good conscience. It was stipulated by the parties that the tax extended on appellee's net receipts for the year 1923 on the assessment as made by the board of review was $5853.40, and that the amount of such tax, if extended on the return of the company, accepted and acted upon by the taxing bodies for that year, scaled and debased in conformity with the assessments on other personal property, would be $2017. The tax for 1924 extended on the board of review assessment was $7019.48; if extended on appellee's return made for that year it would be $3528. The tax extended on the board of review assessment for 1925 was $5059.58; if extended on appellee's return for that year it would be $4072. The tax extended on the board of review assessment for 1926 was $6312.96; if extended on appellee's return for that year it would be $2694. The tax extended on the board of review assessment for appellee's net receipts for 1927, which we hold to be a valid assessment, was $5895.19. Under the evidence

in this case, and the rules of law applicable thereto, appellee should pay tax on its net receipts for the year 1923, $2017; for the year 1924, $3528; for the year 1925, $4072; for the year 1926, $2694, and for the year 1927, $5895.19, making a total of $18,206.19.

While this court has no power to make a tax assessment, yet it and the circuit court, from which this cause came, have power to set aside taxes which are unlawful, and have likewise, in cases like the present, the power and duty to determine what portion of a tax, if any, is lawful, where such fact can be determined from the record. Under the stipulation in this case the circuit court, a jury trial having been waived, should have entered judgment in favor of appellant against appellee for the sum of $18,206.19 and costs.

The judgment of the circuit court is therefore reversed and judgment is entered here for appellant, against appellee, for the sum of $18,206.19 and costs.

*Reversed and judgment for appellant.*